UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN MOGNI, | Case No.: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| FIRST MIDWEST BANCORP, INC., MICHAEL L. SCUDDER, BARBARA A. BOIGEGRAIN, THOMAS L. BROWN, PHUPINDER S. GILL, KATHRYN J. HAYLEY, PETER J. HENSELER, FRANK B. MODRUSON, ELLEN A. RUDNICK, MARK G. SANDER, MICHAEL J. SMALL, and STEPHEN C. VAN ARSDELL, | **COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| Defendants. | |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1. This action concerns a proposed transaction ("Proposed Transaction") announced on June 1, 2021, pursuant to which First Midwest Bancorp, Inc. ("First Midwest" or the "Company") will merge with Old National Bancorp ("Old National").

2. On May 30, 2021, First Midwest's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, First Midwest shareholders will receive 1.1336 shares of Old National common stock for each share of First Midwest common stock they own. Following completion of the transaction, former First

Midwest stockholders are expected to collectively represent approximately 44% of the combined company.

3. On July 23, 2021, in order to convince First Midwest's Shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5. In addition, a special meeting of First Midwest 's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so First Midwest 's stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

**JURISDICTION & VENUE**

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's shares trade on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a First Midwest shareholder.

10. Defendant First Midwest is a Delaware corporation and a party to the Merger Agreement. First Midwest shares are traded on the NASDAQ under the ticker symbol "FMBI."

11. Defendant Michael L. Scudder is the Company's Chief Executive Officer, Chairman of the Board and a director of the Company.

12. Defendant Barbara A. Boigegrain is a director of the Company.

13. Defendant Thomas L. Brown is a director of the Company.

14. Defendant Phupinder S. Gill is a director of the Company.

15. Defendant Kathryn J. Hayley is a director of the Company.

16. Defendant Peter J. Henseler is a director of the Company.

17. Defendant Frank B. Modruson is a director of the Company.

18. Defendant Ellen A. Rudnick is a director of the Company.

19. Defendant Mark G. Sander is a director of the Company.

20. Defendant Michael J. Small is a director of the Company.

21.     Defendant Stephen Van Arsdell is a director of the Company.

## FACTS

22.     First Midwest is a Delaware corporation incorporated in 1982 and headquartered in Chicago, Illinois and is registered under the Bank Holding Company Act of 1956, as amended. It is a publicly traded bank holding company with about $21 billion in assets and an additional $14 billion of assets under management. First Midwest Bank and the institution's other affiliates provide commercial, treasury management, equipment leasing, consumer, wealth management, trust and private banking products and services. The bank has locations in metropolitan Chicago, southeast Wisconsin, northwest Indiana, central and western Illinois and eastern Iowa.

23.     Old National is an Indiana corporation incorporated in 1982 and is a financial holding company. Through its wholly owned banking subsidiary, Old National Bank, Old National provides a wide range of services, including commercial and consumer loan and depository services, private banking, brokerage, trust, investment advisory, and other traditional banking services.

24.     On May 30, 2021, First Midwest's Board caused the Company to enter into the Merger Agreement.

25.     According to the press release announcing the Proposed Transaction:

***

EVANSVILLE, Ind. and CHICAGO, Ill. June 1, 2021 –Old National Bancorp ("Old National") (NASDAQ: ONB) and First Midwest Bancorp, Inc. ("First Midwest") (NASDAQ: FMBI), jointly announced today they have entered into a definitive merger agreement to combine in an all-stock merger of equals transaction with a total market value of $6.5 billion to create a premier Midwestern bank with $45 billion in combined assets.

With nearly 270 combined years of service and a shared commitment to Midwestern values, Old National and First Midwest are two organizations driven

by a customer-centric approach to banking, an unwavering commitment to community and a strong focus on corporate social responsibility, making the combined entity the premier choice for employees, clients and shareholders.

Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, First Midwest stockholders will receive 1.1336 shares of Old National common stock for each share of First Midwest common stock they own. Following completion of the transaction, former First Midwest stockholders are expected to collectively represent approximately 44% of the combined company. The new organization will operate under the Old National Bancorp and Old National Bank names, with dual headquarters in Evansville, Indiana and Chicago, Illinois. Michael Scudder, Chairman and CEO of First Midwest Bancorp, will serve as the Executive Chairman and Jim Ryan, Chairman and CEO of Old National Bancorp, will maintain his role as CEO.

***

**Transaction Advisors**

Keefe, Bruyette & Woods, A Stifel Company, served as exclusive financial advisor and Squire Patton Boggs (US) LLP acted as legal advisor to Old National.

J.P. Morgan Securities LLC served as exclusive financial advisor and Sullivan & Cromwell LLP acted as legal advisor to First Midwest.

26.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

27.     It is therefore imperative that the Company's shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

28.     Section 6.13 of the Merger Agreement has a "no solicitation" clause that prevents First Midwest from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

<u>Acquisition Proposal</u>.

(a)     Each party agrees that it will not, and will cause each of its Subsidiaries and its and their respective officers, directors, employees, agents, advisors and representatives (collectively, "Representatives") not to, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate inquiries or proposals with respect to any Acquisition Proposal, (ii) engage or participate in any negotiations with any person concerning any Acquisition Proposal, (iii) provide any confidential or nonpublic information or data to, or have or participate in any discussions with, any person relating to any Acquisition Proposal or (iv) unless this Agreement has been terminated in accordance with its terms, approve or enter into any term sheet, letter of intent, commitment, memorandum of understanding, agreement in principle, acquisition agreement, merger agreement or other agreement (whether written or oral, binding or nonbinding) (other than a confidentiality agreement referred to and entered into in accordance with this Section 6.13) in connection with or relating to any Acquisition Proposal. Notwithstanding the foregoing, in the event that after the date of this Agreement and prior to the receipt of the Requisite First Midwest Vote, in the case of First Midwest, or the Requisite Old National Vote, in the case of Old National, a party receives an unsolicited bona fide written Acquisition Proposal, such party may, and may permit its Subsidiaries and its and its Subsidiaries' Representatives to, furnish or cause to be furnished confidential or nonpublic information or data and participate in such negotiations or discussions with the person making the Acquisition Proposal if the Board of Directors of such party concludes in good faith (after receiving the advice of its outside counsel, and with respect to financial matters, its outside financial advisors) that failure to take such actions would be more likely than not to result in a violation of its fiduciary duties under applicable law; provided, that, prior to furnishing any confidential or nonpublic information permitted to be provided pursuant to this sentence, such party shall have entered into a confidentiality agreement with the person making such Acquisition Proposal on terms no less favorable to it than the Confidentiality Agreement, which confidentiality agreement shall not provide such person with any exclusive right to negotiate with such party. Each party will, and will cause its Subsidiaries and Representatives to, immediately cease and cause to be terminated any activities, discussions or negotiations conducted before the date of this Agreement with any person other than the other party with respect to any Acquisition Proposal. Each party will promptly (within twenty-four (24) hours) advise the other party following receipt of any Acquisition Proposal or any inquiry which could reasonably be expected to lead to an Acquisition Proposal, and the substance thereof (including the terms and conditions of and the identity of the person making such inquiry or Acquisition Proposal), will provide the other party with an unredacted copy of any such Acquisition Proposal and any draft agreements,

6


proposals or other materials received from or on behalf of the person making such inquiry or Acquisition Proposal in connection with such inquiry or Acquisition Proposal, and will keep the other party apprised of any related developments, discussions and negotiations on a current basis, including any amendments to or revisions of the terms of such inquiry or Acquisition Proposal. Each party shall use its reasonable best efforts to enforce any existing confidentiality or standstill agreements to which it or any of its Subsidiaries is a party in accordance with the terms thereof. As used in this Agreement, "Acquisition Proposal" means, with respect to Old National or First Midwest, as applicable, other than the transactions contemplated by this Agreement, any offer, proposal or inquiry relating to, or any third party indication of interest in, (i) any acquisition or purchase, direct or indirect, of 25% or more of the consolidated assets of a party and its Subsidiaries or 25% or more of any class of equity or voting securities of a party or its Subsidiaries whose assets, individually or in the aggregate, constitute 25% or more of the consolidated assets of the party, (ii) any tender offer (including a self-tender offer) or exchange offer that, if consummated, would result in such third party beneficially owning 25% or more of any class of equity or voting securities of a party or its Subsidiaries whose assets, individually or in the aggregate, constitute 25% or more of the consolidated assets of the party, or (iii) a merger, consolidation, share exchange, business combination, reorganization, recapitalization, liquidation, dissolution or other similar transaction involving a party or its Subsidiaries whose assets, individually or in the aggregate, constitute 25% or more of the consolidated assets of the party.

29.     In addition, Section 8.2 of the Merger Agreement requires First Midwest to pay up to a $97,000,000.00 "termination fee" in the event this agreement is terminated by First Midwest and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to First Midwest's ability to consider other offers.

30.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

31.     First, the Registration Statement omits material information concerning First Midwest's, Old National's, and the pro forma combined company's financial projections and the estimated synergies attributable to the merger.

32. With respect to First Midwest's financial projections, the Registration Statement fails to disclose all line items used to calculate loan growth, loan growth (excluding PPP), deposit growth, net interest margin, provisions/avg. loans, fee income, and efficiency ratio.

33. With respect to Old National's financial projections, the Registration Statement fails to disclose all line items used to calculate loan growth, deposit growth, net interest margin, provisions/avg. loans, fee income, and efficiency ratio.

34. With respect to pro forma combined company's financial projections, the Registration Statement omits these projections in their entirety.

35. With respect to estimated synergies attributable to the merger, the Registration Statement fails to disclose all line items used to calculate fully phased-in estimated annual cost savings of $109 million.

36. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the companies' financial advisor in support of any fairness opinion.

37. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan") in connection with the Proposed Transaction.

38. With respect to J.P. Morgan's *First Midwest Public Trading Multiples Companies Analysis*, the Registration fails to disclose (i) the individual multiples and metrics for the companies observed in the analysis and (ii) which companies may have characteristics that are

materially different from those of First Midwest.

39. With respect to J.P. Morgan's *First Midwest Dividend Discount Analysis*, the Registration fails to disclose (i) the terminal value based on 2026 estimate net income and (ii) the individual inputs and assumptions underlying the discount rate of (a) multiple range 12.5x to 14.5x and (b) cost equity range of 9.5% to 11.5%, and (iii) First Midwest's future dividend stream.

40. With respect to J.P. Morgan's *Old National Public Trading Multiples Analysis*, the Registration fails to disclose (i) the companies observed in the analysis, (ii) the individual multiples and metrics for the companies observed in the analysis and (iii) which companies may have characteristics that are materially different from those of Old National.

41. With respect to J.P. Morgan's *Old National Dividend Discount Analysis*, the Registration fails to disclose (i) First Midwest management projections and (ii) terminal value based on 2026 estimate net income, (iii) specific inputs and assumptions underlying the range of multiple range of 12.5x to14.5x and a cost equity range of 9.5% to 11.5%, and (iv) Old National's future dividend stream.

42. With respect to J.P. Morgan's *Value Creation Analysis* the Registration fails to disclose the individual inputs and assumptions underlying (a) the discount rate of exit multiple range 12.5x to 14.5x  and (b) cost equity range of 9.5% to 11.5%.

43. Third, the Registration Statement fails to disclose the terms of the confidentiality agreements, including whether the agreements contained standstill and/or "don't ask, don't waive" provisions.

44. The omission of the above-referenced material information renders the Registration Statement false and misleading.

45. The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48. Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

49. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

50. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement. Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

51. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

56. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 28, 2021

          **MOORE KUEHN, PLLC**
          */s/Justin Kuehn*
          Justin A. Kuehn
          Fletcher W. Moore
          30 Wall Street, 8th floor
          New York, New York 10005

Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
*Attorneys for Plaintiff*